5-25-0297 Appellant, if you are ready to proceed, please step forward and identify yourself for the record. You may do so. I please the court, counsel, my name is Thomas Hewitt and I'm here on behalf of the appellant Jessica Scott. We are here today to ask this court to reverse the trial court's April 2, 2025 order, modifying the operative parenting plan, the parenting plan that was in place at the time. I believe this is a case where in order to get, as the court is well aware, in order to get to the point where we are modifying the parenting plan, it's incumbent on the petitioner, the movement, to prove a substantial change in circumstances. They did not prove a substantial change in circumstances in this case and the trial court's order finding that a substantial change in circumstances occurred was against the manifest weight of the evidence. First of all, with respect to the trial court's order, it just kind of conclusively concludes or that a substantial change in circumstances occurred without specifying what the change in circumstances was. Now in the petition to modify one of the alleged change in circumstances that was pointed out and I think kind of advanced at the hearing in this matter was the age of the child. The child's age, she's now 11, she was around 3 when the last, the temporary parenting plan was put into place in 2017. She was just an infant when her parents were divorced. But there's a wide array of case law that holds age alone is not sufficient to prove a substantial change in circumstances. The reason is, is because age is a fact that you would anticipate and the modification statute specifically provides, it requires that the substantial change in circumstances has to be based on facts that arise after the judgment and which were not anticipated at the time of the judgment. Now what was anticipated here is that the parties would move to a schedule, a more normal so to speak schedule when Mr. Scott, the appellee, was out of the military. Because what we have here is a person, when these parents were divorced, he's been in the military since they were divorced. He has always been out of state. So if we're considering the age of the child, we have to consider it within the totality of circumstances and the totality of circumstances here shows there was no change in circumstances. When the operative order bearing plan was put into place, that they were seeking to modify here, he was out of state. He was in Georgia. In fact, there was times when he was in Kosovo, the court even noted that in its ruling. So he's never been in Illinois and it's never been a situation where he had overnight visitation. One of the things he alleges is the animosity between the parties, but it's not just the animosities. With respect to change in circumstances, a substantial change in circumstances, they specifically allege that Ms. Lawhead, as she goes by now, has kind of interfered with his parenting time. But all they can point to, all they pointed to in their petition was three situations in about seven years. They point to October of 2018, June of 2023, and December of 2023. I don't think those three situations in eight or ten years since the last order was put in place would amount to a substantial change in circumstances, especially where, for instance, there was text messages introduced at trial showing that with this incident of October 2018, he was offered parenting time. So for those reasons, I don't think this is a case. It's one of those cases where there is no substantial change in circumstances. And therefore, I realize that the standard is against the manifest way of the evidence, but the statute specifically says, and the case law holds, before a trial court can consider modifying a parenting plan, before you get to that point, there has to be a substantial change in circumstances. And in this case, there are not, assuming the appellate court were to agree with the trial court that there was a substantial change in circumstances. Our position is that the trial court erred in the way it modified the particular parenting plan. Now, I want to be clear. My client had no problem with facilitating a relationship with Mr. Scott and his daughter, and with even overnights and visitation in Illinois. When he comes back to Illinois, there was ample evidence he comes to Illinois twice a year. Or he's able, I should say, to come to Illinois twice a year. Which that's one of the issues, he doesn't always come to Illinois twice a year. There was testimony he goes a year, year and a half in between contact with his daughter and in between attempts to see her. But it was specifically argued at the, in closing arguments, right before the trial courts entered his ruling, that my client's counsel at the time specifically said, we're not even disagreeing that he should have significant amount of time in the summer, but it should be in Illinois. So what we have here is, and again I realize the standard is manifest way to the evidence, but what we went, what we've done here is we've went from a situation where there's been no overnight parenting time, and by the way, that's pursuant to the orders, which is that he shall have parenting time, and it kind of leaves it at his schedule, and I understand he's in the military, and we respect his service, and I get that. But on the same token, it allows him to kind of, it just kind of leaves it out there, there's no really set schedule, it's just when he comes to Illinois, if he comes to Illinois to see his parents, he shall have some parenting time. So I think there was testimony he might have had like one overnight time visitation, I know visitation is not the word we use now, parenting time, but he had one instance of overnight parenting time in about ten years. And so it's in the record that my client was okay with him having overnights in Illinois, but what the court did was kind of took it a step forward, and this is where we think the finding is against the manifest way to the evidence, or the modification I should say, is that the court then is allowing the child to go to Illinois, or to New York to see him. He is scheduled to go to South Korea for two years, but the court order allowed, required the minor to go to New York with him. There was testimony about her flying, and then starting in 2026, the court order will allow him, it will allow him parenting time when he comes back to the United States. It doesn't say where the parenting time can occur, it just says he has to pick her up and drop her off in Illinois, but it kind of leaves it to where he can see her wherever. So considering the statutory factors here, most of them weigh in favor of, or against this drastic kind of modification. One of the factors is the wishes of the child, and I want to just kind of touch on that for a second, that there is some kind of argument, testimony, with respect to the wishes of the child, that on a couple of occasions, when she was visiting him when he was in Illinois and his parents, she called and asked her mom if she could stay later. But she never asked for an overnight, and she never asked to go to New York. So the wishes of the child, it's lacking in that her wishes were to go to New York. But I also bring up that particular factor, and I think the rest are kind of addressed in my brief. I also want to bring up that factor, because it kind of ties into our second argument here, that it is our position, the trial court in this case, abused its discretion in denying APM a review. And again, I understand that what we're dealing with here, with abuse of discretion, I understand the kind of the barrier that's put there with that, and I get that the trial court has the  But in this, I think that this is one of those rare cases where the court should have done, or the court, I should say, abused its discretion by denying counsel's request for an in-camera review. And the reason I say that is because of this. The court's reasoning was that it needed to get the hearing done that day, which was a  March 12th was a Wednesday. But it didn't even say because Mr. Scott was scheduled to go back to New York that day and needed to go. It just said it needed to get done that day. The child was not available, apparently, or at the courthouse. But I think that the case could have, I'm routinely in trials where the judge will say, we'll come back, let's fit this in the schedule tomorrow or within the next couple of days. So there was no findings by the trial court that it couldn't do it within the next two days. We have an 11-year-old girl here who had had very, very minimal contact with her father, kind of when, you know, like I said, there's times that the evidence was it'd be a year, a year and a half in between visits or seeing him. So very minimal contact. And I just think where there's a specific statutory factor when the courts are required to consider and consider the child's best interests as to the wishes of the child, this is a case, given all the totality of the circumstances and the facts of this case, where it would not have hurt anything to delay the ruling a day or two to allow the court to conduct an in-camera review. So for those reasons, the trial court abused its discretion in denying my client's request for an in-camera review. I see that I have plenty of time, so if there's any questions, I would be more than happy to entertain them. Otherwise, I would respect that. I have a question. Go ahead. What about the court's jurisdiction when the child leaves Illinois? I think the court still has jurisdiction because it's within its order. Now, he's not, he's not filed any type of petitions to relocate, so that would be governed by the... Well, if the child was not brought back, what happens in a timely manner? Well, then my client would be left with the remedies, I suppose, of filing a petition for oral to show cause and going that route, a contempt petition, and that would be a nightmare if that were to happen. But I think the court still retains jurisdiction. It's just that other legal avenues would have to be pursued by my client then at that point. So there's no concern under the law for jurisdiction, losing jurisdiction over the child? The child still resides in Illinois. I mean, that's clear. The child court's order didn't say anything about her residence changing for school enrollment. No, my concern is when a child leaves the jurisdiction of Illinois, the four corners of Illinois, so to speak, the boundary lines. Yeah, I think the courts in New York would have to enforce the, I forget the particular law, the federal law or the... Right, there would be a request, the judgment would have to be registered in Illinois. Correct, yes. Or in New York. Yes, that's definitely a concern as it should be. I don't think the argument was raised at trial at all, but it's definitely a concern and I think everybody needs to be kind of hesitant about it, worried about it. Okay, thank you. But to be clear, to follow up on that, I mean, children visit out-of-state parents all the time and the Illinois courts retain jurisdiction, is that correct? This is my understanding, yes. And then in terms of substantial change in circumstances, that was pledged, correct, in the motion to modify, that there was a substantial change? In the petition to modify, it was pled and the specific circumstances were the age and my client not facilitating interaction and they brought up three specific instances, one in October of 2018 and one in June of 2023 and one over Christmas time of 2023. But the issue related to the age of the child was more about the ability for the child to track, correct? Correct. Not just that the child had gotten older. It was tied in with the ability of the child to travel, but I guess my response to that is that that was kind of an anticipated fact and this was a case where it was kind of anticipated. My reading of kind of the original agreement was that when Mr. Scott was out of the military, they would move him to something more formal with a set time. So isn't that what he's doing by filing a petition to modify? Isn't he asking for something more formal with a set time? The order doesn't really give him set time other to say when he's on leave, he can come to Illinois, he can give notice and then it puts my client kind of in the position and their daughter, she's in several activities, those are kind of laid out, so all he's got to give is a couple weeks notice, but it doesn't really give set time. Aren't you arguing that there can never be a substantial change in circumstances unless he retires from the military or leaves the military? No, I'm just saying within the totality of the circumstances, that was one, that was what was anticipated. But if there was significant change in circumstances, for instance, maybe if he relocated around here or if they pledged something more kind of specific that was, to me, more of a substantial change in circumstances than what was alleged, I don't necessarily know what that would be. All I can come to mind is a couple things. Maybe if he moved closer to here, things like that. But I just don't believe they proved a substantial change in circumstances in this case. Thank you, Your Honor. Please identify yourself for the record and you may proceed, ma'am. Thank you, Your Honor. May it please the Court and Counsel, my name is Esther Cha and I'm appearing on behalf of the appellee and original respondent, Mr. Tyler Scott. Today I do hope to address three issues for Your Honors. First, that a substantial change in the circumstances of the child and the parties has occurred that necessitated a modification of parenting time and that finding was not an abuse of discretion or against the manifest weight of the evidence. Second, that the trial court's allocation of parenting time to Mr. Scott during his days of leave from the military while he is in the United States, specifically in Illinois during the school year, and then within the United States during the summer months, was not against the manifest weight of the evidence, particularly noting that he was allocated 30 days of leave pursuant to his military obligations. And finally, that denial of Ms. Lawhead's motion for an in-camera interview was not an abuse of discretion. The Court, I'm sure, is very well aware of the standard of review as set forth in in-ray marriage of faiths by the Illinois Supreme Court as the trial court was in the position to assess the credibility of the witnesses, observe their demeanor, and assess and make findings when there was conflicting testimony of fact between the parties. But I also think it's notable in this case that the same trial judge has also presided over this case since 2015, as the record will reflect. He has been presiding over the case since the original judgment of dissolution of marriage was entered and the joint parenting agreement was entered. He also presided over the several enforcement actions and temporary relief petitions that had to be filed in order to facilitate father's time leading up to the petition to modify that was filed in 2024. Now, with respect to the substantial change in circumstances, certainly it is our position that a change has occurred and that required a modification of the parenting time schedule. Counsel argues that because the child, in this case, was anticipated to have aged, that that could not be a substantial change in circumstance and cites the Tractus case, a third district case. And in that case, it is notable that the children were 6 and 9 years old at the time of the initial custody determination, so they would have been school-aged. Fathers sought to modify when the children were 11 and 13, citing that they were older and that they had expressed a wish or interest in spending more time with them. The court in Tractus specifically noted that it refused to blanketly hold that the age or the wish of the child alone would not be a substantial change. It depends on the facts of each case and the circumstances of each case. In that case, the court also noted that in Ray Marriage of Davis, another third district case, was good law wherein a child was allocated parenting time when he was 3 years old at the time of the initial divorce, but a mere within 3 years, mother filed a petition to modify. Although the minor child was only 3 years older, he was going to start school. And that change in addition of school obligations where the child would attend school as the parents lived in different towns, that would necessarily impact and change the parenting time schedule and how it would affect the minor child. In this particular case, the minor child in 2015 at the time of the divorce was under 2 years old. The most recent temporary parenting time order was entered in September of 2017 when the child was 3 years old. Again, still not school-aged. The petition to modify was filed in 2024 when she was 10. She is now 11 years old. She is now in school. She is also enrolled in multiple extracurricular activities. These are extensive. Cheer, tumbling, softball, soccer, violin lessons, orchestra. And these came up a lot in the conversations between the parties as mother would oftentimes cite these as obstacles to father having parenting time. So those activities, these new commitments were very much impacting their ability to follow the order that was entered in 2017 that required that the parties cooperate and work together to coordinate parenting time. The child being older also had her own cell phone, although mother refused to share that cell phone number with father initially. The fact that the minor child now had this device would presumably be able to communicate freely and directly with father was of great importance, especially given that Mr. Scott, being a member of the armed forces and having to live abroad, more heavily relies upon that electronic communication to have a relationship with his daughter who lives here in Illinois. And I think the most substantial change is that the mother had failed to cooperate or meaningfully work with father to actually facilitate time pursuant to the 2017 order. Now, Petitioner argues in his brief that because she was always difficult, her bad behavior should have been anticipated and that she should be protected against any modification on the basis of her bad behavior because she was so bad before. Well, I don't believe that that is the state of law in Illinois, and I don't believe that we should hold her to a different standard because she showed her bad behavior prior to the petition being filed. Your Honors, with respect to mother's refusal to or unwillingness to work with father, in our petition we did allege three occasions, as counsel had argued, and he says three occasions over seven years. What's the big deal? Well, when a father is only able to exercise leave in the state of Illinois, which was the requirement under the 2017 order, he can only travel to Illinois one to two times a year. So if one to two times a year mom is denying that request, that's potentially six, 12, maybe even 18 months that he would go without having time with his child. So each occasion may be isolated in its own, but when you consider it in the grander context of how frequently he was actually able to travel to Illinois, pursuant to the restrictions of this order, it is significant periods of time that he was being denied parenting time. It is also undisputed, for example, that in June of 2023, when the father was home for a period of ten days, I think mother thought it was seven days, but seven of ten days he was home, and the minor child was only allowed to have lunch with him once, one occasion in the entire summer of 2023. And to mother, she believes that that was reasonable, that that was enough. But that is not reasonable, and that is not enough. Pursuant to Section 602.8 of the INDMA, a parent that is not granted significant decision-making is entitled to reasonable parenting time with the child unless there is some kind of serious endangerment. Mr. Staub is entitled to reasonable parenting time with the minor child, and the minor child is entitled to have a relationship with her father. And I'll draw the Court's attention particularly to the Lyons case in the Fifth District in 1992. In that case, it was actually another situation where there was a kind of vague order. In that case, the parties had a Missouri divorce that granted father visits, quote, on all reasonable occasions, end quote. Mom moved to Illinois. Dad moved to Iowa. Again, significant distances between their homes. Mom would not coordinate with father or his legal guardian, because he was disabled, to facilitate time, because she would not let the children travel to Iowa, creating a huge burden on father and his guardian in exercising time. Due to the refusal to allow visits to Iowa, the Court found that he was not being afforded reasonable visitation, and found that a modification was necessary to serve the best interests of the minor child. And so, Your Honor, we do believe that based on all of the reasons, and also set forth in my brief, there has been a substantial change that does require modification of the parenting time schedule. Second, Your Honors, with respect to the parenting time that was allocated, it's our position, excuse me, that the parenting time schedule allocating time to father, while he has leave from the military in the United States, which again, at most is 30 days per calendar year, was not against the manifest weight of the evidence. Your Honors, previously under the old order, the parenting time schedule that was allotted under the 2017 order necessarily called for some kind of cooperation between the parties, in the belief that everybody would act like adults and would cooperate. Unfortunately, that did not happen. So the trial court, in its April 2025 ruling, gave specific parameters, specific guidelines, to allow father to have a clear understanding of when his parenting time would occur, and to have an enforceable right to parenting time. No longer being subject to the whim of mother, or having to negotiate with mother every time he thought to exercise time with a minor child. Your Honors, also notable in the trial court's oral ruling, the judge gave extensive discussion of the several concerns that he had with respect to the prior order, and with respect to the conduct of the parties leading up to his ruling. He discussed extensively factor number 13, which was the willingness and ability of each party to facilitate or encourage the other parent's relationship with the minor child. And that seemed to be the central focus. Much of the evidence was presented as to that factor. And the court did make several comments to that effect during its oral ruling. The court also gave great consideration to the child's adjustment to her homeschool and community, her needs, as the court structured the parenting time schedule to ensure she always sleeps at her mother's house on school nights, and that the father would take the minor child to all of her extracurricular activities that are greatly of importance to her. So the court took great care to consider all of those things that were important to the child and her connections to her homeschool and community. Your Honors, with respect to the willingness and ability of the parent to work with the other parent, there are several cases that are cited in our briefs that address that that can be a basis for modification of parenting time. When one parent is so obstructive, interferes so much with the other parent's time. And it is arguably the most important factor in this case, given that mother has nearly all of the parenting time. Mr. Scott was completely beholden to her under the previous order to get any kind of parenting time with his child. And so, Your Honors, with respect to that, with the Lyons case that I had previously mentioned, the In Re Marriage at Dibblebass, the Ricketts case, the Bates case, and the Huffman cases, all as cited in my brief, do go back to cases where modification has been affirmed as a result of a parent's interference with the other parent's time. Now, Your Honors, with respect to the trial court's denial of the in-camera interview that was not an abuse of discretion, the trial court has the discretion whether to grant an in-camera interview or not. It is not an absolute right. It is important to note that this motion was made after the conclusion of all of the testimony. There was no written motion made. We had confirmed the trial date 60 days prior to the actual hearing date. Had this been such a critical issue for Ms. Scott, such a motion should have been made so that we could have addressed the issue of whether there were better or alternative means to glean the wishes of the child without putting her through the pressure or difficulty or discomfort of an in-camera interview. We were not given the opportunity to discuss an alternative such as a guardian love item. It was after Mr. Scott had presented all of his evidence and when Mrs. Scott had presented all of her evidence, at the very close, that is when the motion for in-camera interview was made. To say that the motion was being denied simply because there was limited time is an oversimplification of the facts and the issues that the court had to take into consideration at that time. The motion, as I previously mentioned, was made extremely late. The father had traveled from New York for the hearing. The father had last seen the minor child at Christmas of 2024, so he had already gone three months without having any parenting time with the minor child. The next extended weekend for a visit at that time was for Easter 2025, which was very imminent. All of these timing factors were important, something that the trial court had to take into consideration when deciding whether or not to grant an in-camera interview. Another important point is that there had been other evidence presented to the court about the child's wishes. As stated by the court in Reg. S. F. and Justin H. of 4th District 2024 case, there are many different ways that are better than an in-camera interview to get a child's preferences before the court. That could be through admission of the child's hearsay statements, their testimony of a guardian love item, or through professional personnel. In this case, the mother testified that the child didn't want to go. Mother did testify to that. She also said that the minor child was seeing a guidance counselor because presumably she did not want to go. Mother and father also testified consistently that when father had a Christmas visitation with the minor child over December of 2024, which was by an agreed temporary order, he was granted three days of parenting time. And they agreed that if the minor child wanted to stay later on any of those three days, she could. And what happened on two out of those three days, she asked to stay later. She asked to stay later on two out of those three days, indicating that she had enjoyed her time. So the court had, in light of all of the factors before, in light of all the evidence before, the court made the proper exercise of its discretion in denying the in-camera interview. And I will also note that, again, Mr. Scott had requested relatively modest parenting time. And relatively modest parenting time was granted. Again, 30 calendar days per year. And so without there being any allegation of abuse or endangerment or risk of harm to the child, anything else that could have been said during that in-camera interview would have justified something less than what he had received. So, Your Honor, we're asking that you do affirm the trial court's decision as we believe that it was not against the manifest weight of the evidence and that it was in the best interest of the minor child. Thank you, Your Honor. Thank you, counsel. Thank you, Your Honor. Rebuttal. Your Honor, I will delay my time for rebuttal. I'll just stand on my arguments previously made. Thank you. All right. Thank you, counsel. We will take this matter under advisement and issue a ruling in due course.